**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ELIJAH BARKSDALE,**

             **Plaintiff,**

     v.                                                                      9:10-CV-0831
                                                                       (MAD/DEP)

**R.T. FRENYA, Correction Officer, Clinton Correctional
Facility; CURTIS DROWN, Correction Hearing Officer,
Clinton Correctional Facility, DALE ARTUS,
Superintendent, Clinton Correctional Facility, and
BRIAN FISHER, Commissioner of NYS Department
of Correctional Services ,**

             **Defendants.**
_____

**APPEARANCES:**                                                         **OF COUNSEL:**

ELIJAH BARKSDALE
70 Baruch Drive, #6E
New York, New York 10002
*Plaintiff Pro Se*

HON. ERIC T. SCHNEIDERMAN                      David L. Cochran, Esq.
Attorney General for the State of New York
The Capitol
Albany, New York 12224
*Attorney for Defendants*

**MAE A. D'AGOSTINO, U. S. DISTRICT JUDGE**

**MEMORANDUM-DECISION AND ORDER
INTRODUCTION**

       In this *pro se* action under 42 U.S.C. § 1983, plaintiff, an inmate in the custody of the

New York State Department of Correctional and Community Supervision ("DOCCS"), claims

that defendants violated his Eighth and Fourteenth Amendment rights. Defendants' moved for

summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 44). Plaintiff did not oppose the

motion. The motion was referred to United States Magistrate Judge David E. Peebles for a Report-Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3( c ). Magistrate Judge Peebles issued a Report and Recommendation (Dkt. No. 47) recommending that the motion be granted in part and denied in part.[1]

Defendants filed specific objections to the Report-Recommendation. (Dkt. No. 49). In view of the objections and pursuant to 28 U.S.C. § 636(b)(1), this Court conducts a *de novo* review of these issues. The Court reviews the remaining portions of the Report and Recommendation for clear error or manifest injustice. *See Brown v. Peters*, 1997 WL 599355, at *2-3 (N.D.N.Y.) *aff'd without op.*, 175 F.3d 1007 (2d Cir. 1999). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## BACKGROUND

### I.   Factual Background

As the parties do not object to Magistrate Judge Pebbles' thorough recitation of the facts, the Court adopts the "Background" and "Procedural History" as set forth therein.

### II.   Report and Recommendation

On December 2, 2011, defendants moved for summary judgment arguing: (1) that defendant Fisher lacked personal involvement; (2) plaintiff failed to exhaust his administrative remedies; and (3) plaintiff did not possess a protected liberty interest in remaining free from the challenged confinement.

On August 17, 2012, Magistrate Judge Peebles recommended that the Court grant in part and deny in part defendants' motion for summary judgment. Magistrate Judge Peebles

---

[1] The Clerk is directed to append Judge Homer's Report-Recommendation to this decision, and familiarity is presumed.

recommended that defendants' motion be granted as to all claims against defendant Fisher based upon his lack of involvement in the relevant conduct. Magistrate Judge Peebles also concluded that plaintiff failed to exhaust available administrative remedies with respect to his failure to protect claim against Frenya. Magistrate Judge Peebles recommended denying defendants' motion for summary judgment and dismissal of plaintiff's procedural due process claims against defendants Drown and Artus. Magistrate Judge Peebles reasoned that defendants failed to sustain their burden of demonstrating the lack of genuine issues of fact surrounding whether plaintiff was deprived of a cognizable liberty interest by virtue of his 120-day SHU confinement.

### III.  Objections

Defendants Drown and Artus object to the portion of the Report-Recommendation that denied their motion for summary judgment and dismissal of plaintiff's procedural due process claims against them. Defendants argue that plaintiff failed to allege or demonstrate any genuine issue of material fact as to whether he suffered from an atypical and significant hardship.

## DISCUSSION

### I.  Standard on Motion for Summary Judgment

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp.2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## II. Due Process

The Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that

4

imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

As a threshold matter, an inmate asserting a violation of his right to due process must first establish that he had a protected liberty interest in remaining free from the confinement that he challenges and, if so, that the defendant deprived the plaintiff of that liberty interest without due process. *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* Thus, to show that a liberty interest is sufficient to invoke the protections of the Due Process Clause, a prisoner must establish both that his resulting confinement or restraint creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and that the state has enacted a regulation or statute which grants inmates a protected liberty interest in remaining free from that confinement or restraint. *Id.* at 484; *see also Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement. *See Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999); *Arce v. Walker*, 139 F.3d 329, 335–36 (2d Cir. 1998).

"Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from

5

other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.' " *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (citations omitted). In making such a determination, courts are required to examine the actual circumstances of confinement. *Id.*

In *Palmer v. Richards*, 364 F.3d 60 (2d Cir. 2004), the Second Circuit held:

> [O]ur cases establish the following guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. Where the plaintiff was confined for an intermediate duration-between 101 and 305 days-"development of a detailed record" of the conditions of the confinement relative to ordinary prison conditions is required. In those situations, a district court must "make a fact-intensive inquiry," examining "the actual circumstances of SHU confinement" in the case before it without relying on its familiarity with SHU conditions in previous cases. Disputes about conditions may not be resolved on summary judgment, but where the conditions are undisputed, the *Sandin* issue should be resolved by the court as a matter of law.

*Palmer*, 364 F.3d at 65 (internal citations omitted).

In cases involving confinement between 101 and 305 days, courts are required to develop a detailed factual record regarding the confinements in the SHU which may include "evidence of the psychological effects of prolonged confinement in isolation and the precise frequency of SHU confinements of varying durations." *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000). In the absence of a detailed record, courts have affirmed dismissal of due process claims only in cases where the period of time spend in the SHU was exceedingly short and there was no indication that the plaintiff endured unusual SHU conditions. *Palmer*, 364 F.3d at 66.

In this matter, plaintiff testified during his deposition as follows:

> Q. As a result of this TIER hearing, how long were you confined in SHU?
>
> A. For four and a half months. For four months on that incident.

6

> Q. Okay. Now, your complain says you were there for 120 days. Does that sound about right?
>
> A. Yes [. . . ].
>
> Q. Do you know how long you served in SHU just as a result of this incident?
>
> A. I think I did five months and change maybe.

*See* Pl. Dep. at p. 19.

Indisputably, plaintiff was confined to the SHU for 120 days in the SHU, thus placing him within the guideline governing intermediate durations of confinement. However, during his deposition, counsel did not pose any questions or elicit any answers from plaintiff involving the conditions of his confinement in SHU. Moreover, while defendants presented affidavits in support of their motion for summary judgment, the affidavits are devoid of any reference to plaintiff's actual conditions of confinement in the SHU. There is no detailed record or evidence regarding the conditions of confinement in the SHU and how those conditions compared to "the ordinary incidents of prison life".

On a motion for summary judgment, defendants bear the burden of proof. "Only when the conditions are uncontested may a district court resolve the issue of atypicality of confinement as a matter of law." *Palmer*, 364 F.3d at 65. Consequently, viewing the evidence in a light most favorable to the non-movant, as the Court must due, defendants' motion for summary judgment and dismissal of plaintiff's due process claim is denied. *See Green v. Herbert*, 677 F.Supp.2d 633, 636 -637 (W.D.N.Y. 2010). The Court has reviewed the cases cited by defense counsel which allegedly support defendants' arguments. However, the Court finds these cases unpersuasive as they pre-date the Second Circuit's ruling in *Palmer*.

Upon *de novo* review of the remainder of Magistrate Judge Peebles' findings, the Court accepts and adopts the Report-Recommendation.

It is therefore

**ORDERED** that:

1. The Report-Recommendation (Dkt. No. 47) is hereby adopted in its entirety.

2. The Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

Dated: September 19, 2012
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge